UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VERLENA SEXTON-WALKER,                     Case No. 10-15146

           Plaintiff,               George Caram Steeh
v.                                          United States District Judge

CUNA MUTUAL INSURANCE GROUP,               Michael Hluchaniuk
                                            United States Magistrate Judge

           Defendant.
_____/

**REPORT AND RECOMMENDATION**
**MOTIONS FOR SUMMARY JUDGMENT (Dkt. 29, 33)**

## I.    PROCEDURAL HISTORY

Plaintiff filed this diversity action for breach of an insurance contract on

December 28, 2012.  (Dkt. 1).[1]  Defendant filed an answer and affirmative

defenses on March 29, 2011.  (Dkt. 8).  Plaintiff filed her motion for summary

judgment on January 27, 2012.  (Dkt. 29).  Defendant filed combined motion for

summary judgment and response to plaintiff's motion for summary judgment on

February 21, 2012.  (Dkt. 33).  These motions were referred to the undersigned for

report and recommendation.  (Dkt. 35, 40).  Plaintiff filed her response to

defendant's motion for summary judgment on February 24, 2012.  (Dkt. 39).  On

---

[1]  Plaintiff is not pursuing a claim for loss of hearing. (Dkt. 29, Pg ID 329).
She also appears to have abandoned any claim for spousal insurance at this time.
(Dkt. 29, Pg ID 331).

March 30, 2012, defendant filed a reply.  (Dkt. 41).

For the reasons set forth below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED** and that plaintiff's motion for summary judgment be **DENIED**.

## II.   FACTUAL BACKGROUND

In 2007, plaintiff, a resident of Detroit, Michigan, purchased accidental death and dismemberment insurance with CMFG Life.  (Defendant's Appendix of Exhibits (D. App.) at Ex. A2 at CUNA 2-14).  According to the Certificate, "dismemberment", as it relates to the loss of sight, means "total and irrevocable loss of the entire sight of the eye (visual acuity of 20/200 or less."  (Dkt. 33-2, Pg ID 434, CUNA 8).  Five months after issuance of the Certificate, plaintiff submitted a claim for loss of hearing (CUNA 15) and a month later, in December 2007, a claim for loss of sight subsequent to an accident on a bus.  (CUNA 118, CUNA 249-250).  CMFG Life denied her claim for loss of hearing in November 2007 as plaintiff had been able to communicate with CMFG Life on the telephone, evidencing less than "total and irrecoverable loss of hearing in both ears."  (CUNA 17, 107).  Plaintiff provided additional information on February 26, 2008, including a completed accidental dismemberment physician's statement by plaintiff's ear, nose and throat physician, identifying plaintiff's loss of hearing as not entire and irrecoverable.  (CUNA 217).

In April 2008, CMFG Life received records from Kresgi Eye Institute related to an examination on November 5, 2007, where plaintiff presented with a distance visual acuity of 20/100 in the right eye and 20/60 in the left eye, which improved after pinhole use to 20/70 and 20/50. (CUNA 182). Plaintiff reported neither wearing glasses nor contact lenses. (CUNA 184). On June 3, 2008, CMFG Life received correspondence from Dr. Daniel Lin, answering CMFG Life's questions as follows:

> Where are the results of his [sic] visual acuity? Most recent exam on March 17, 2008 shows a visual acuity [uncorrected] to be 24/100 in the right eye and 21/100 in the left eye and manifest refraction with the right eye been 0/50, with an acuity of 21/50, left eye without 0/50 sphere with acuity of 20/80.

(CUNA 163). Dr. Lin further informed that he expected improvement of plaintiff's vision with treatment of plaintiff's corneal tear film disease. (CUNA 164). Dr. Lin was unable to pinpoint and say with any certainty what caused plaintiff's condition. (CUNA 163-64).

After receipt of Dr. Lin's narrative, CMFG Life followed up with his office and was informed that there had been a dictation error and that plaintiff's uncorrected vision was on the right 20/400 and on the left 20/100. Her corrected vision, however, was 20/150 right and 20/80 left. (CUNA 158). After review of all of the information received, CMFG Life informed plaintiff on June 19, 2008

that it had been unable to confirm the alleged accidents she indicated she was

involved in based on the information she had provided and that plaintiff did not

meet the definition of loss of sight with a visual acuity of 20/200 or less.  (CUNA

118, 160-161).  CMFG Life explained:

> According to you, your vision problems arose from accidents allegedly to have occurred on October 19, 2007 and December 27, 2007. We have attempted to confirm these incidents but have been unable to do so base[d] upon the information you provided.
>
> You have reported that on October 19, 2007 you were a passenger on a city bus […] when it stopped abruptly and you struck your head on the window. You indicated that you did not report the incident to the authorities, the driver of the bus or the owner's/operator's of the bus.
>
> You have also indicated that your first treatment following this incident was on October 30, 2007. Regarding the December 27, 2007 incident you advised you were driving and were on her [sic] way to the airport near Southaven, Mississippi and Memphis, Tennessee, and saw an animal run out into the road which was wet and slippery and that you swerved; hitting the brakes to avoid the animal and hit your head on the ceiling of the vehicle. You stated it was stormy and raining "viciously." You further indicated that you did not report this incident to the authorities. We have researched the weather reports for South Haven and Memphis and there is no[r] record of precipitation on December 27, 2007.
>
> In addition, we have reviewed your medical records and according to the information we received, we are unable to extend accidental dismemberment benefits on your behalf because your loss of vision does not meet the definition of loss of sight with a visual acuity of 20/200

or less as defined in the contract. Therefore, no benefit is payable.

(CUNA 160)

In December 2008 and January 2009, plaintiff provided additional information for CMFG Life's review. (CUNA 145-149, 118). This additional information included an accident report from Alamo rent a car relative to plaintiff's December 27, 2008 incident, identifying it as a rear-ending in a gas station in Memphis, Tennessee where she injured her right shoulder and neck. (CUNA 146). Moreover, plaintiff provided correspondence from Dr. Lin, claiming that Plaintiff's uncorrected visual acuity in August 2008 was 20/400 in the right eye and 20/100 in the left eye. (CUNA 142). Dr. Lin's statement did not address plaintiff's corrected visual acuity. *Id*. CMFG Life continued processing plaintiff's claim on receipt of the information. (CUNA 138). On January 28, 2009, CMFG Life reached out to Dr. Lin to verify the information received and Dr. Lin explained that he could not state for certain that plaintiff's loss of sight was caused by an accident and he explained that the loss of sight is not total and irrecoverable at this point. (CUNA 20). He further verified that her nerve damage was not consistent with her loss of sight. *Id*.

On March 6, 2009, CMFG Life forwarded plaintiff's file to Dr. Jonathan Trobe, Professor of Ophthalmology and neurology at the University of Michigan

Kellogg Eye Center, for an independent medical examination of plaintiff. (CUNA 134-35). The independent medical examination went forward on April 20, 2009. (CUNA 127). Subsequently, Dr. Trobe provided a detailed report to CMFG Life, summarizing plaintiff's medical history relative to her claimed vision loss, indicating that she reported first experiencing loss of vision subsequent to a motor vehicle accident in October 2007. *Id.* He noted that she did not consult an emergency room until three weeks after the accident, at which point her visual acuity was found to be 20/100 in the right eye and 20/60 in the left eye. *Id.* In January 2008, she was found to have visual acuity of 20/400 in the right eye and 20/100 in the left eye. *Id.* Dr. Trobe further found that plaintiff's visual field examination at that time produced a high number of false negative responses, indicating that plaintiff was not cooperating. *Id.* Two weeks later, on January 21, 2008, plaintiff was found to have visual acuity of 20/200 in the right eye and 20/150 in the left eye together with pallor of both optics discs and a punctate keratopathy. *Id.* Punctal plugs were installed in both eyes and an optical coherence tomography study and a brain MRI scan were performed, both of which were normal. *Id.*

Dr. Trobe noted that in November 2008, Dr. Lin examined plaintiff and found visual acuity of 20/400 in the right eye and 20/100 in the left eye. *Id.* Dr. Lin further found lissamine green staining of the conjunctiva and concluded that

the patient had ocular surface disease. *Id.* There were no abnormalities of the

optic nerve. I. Dr. Trobe's examination of plaintiff demonstrated uncorrected

acuity of 20/200 in the right eye at distance, 20/70 at near and 20/30 in the left

eye. (CUNA 127). Dr. Trobe stated:

> In summary, this is a completely normal ophthalmologic
> examination except for the patient's alleged subnormal
> visual acuity which I believe to be of psychogenic origin.
> In fact, the evidence is that the patient is malingering
> with regard to her visual loss.

(CUNA 128). As to the questions posed by CMFG Life, Dr. Trobe indicated:

> 1. Is loss of sight due to an injury or could it have been
> caused by a medical condition?
>
> This is due neither to the injury nor to any medical
> condition. The patient is malingering.
>                           […]
> 7. What is the patient's corrected vision? What is her
> uncorrected vision?
>
> Her alleged uncorrected vision is 20/70 in the right eye
> and 20/30 in the left eye but I believe she is capable of
> 20/20.
>
> 8. Is there any physical limitation as the result of the loss
> of sight?
>
> No, because I believe the patient can actually see
> normally.

(CUNA 127-28).

In correspondence dated April 30, 2009, CMFG Life denied plaintiff's

Report and Recommendation
Cross Motions for Summary Judgment
*Sexton-Walker v. CUNA*; Case No. 10-15146

claim, explaining:

> … On December 10, 2007 you submitted a claim for loss of sight. On June 19, 2008 we wrote you advising that we were unable to confirm the alleged accidents you indicated you were involved in based on the information you provided. In addition, we advised that you did not meet the policy requirement as your loss of vision did not meet the definition of loss of sight with a visual acuity of 20/200 or less as defined in the contract. In January of 2009 you provided additional information from Dr. Lin who you had been seeing. Dr. Lin examined you on November 24, 2008 who found subnormal visual acuities of 20/200 in the right eye and 20/100 in the left eye. He found lissamine green staining of the conjunctiva and concluded that you had ocular surface disease. Dr. Lin found no abnormalities of the optic nerves. We followed up with Dr. Lin who stated he could not say for certain that your loss of sight was due to an accident or that the loss of sight was total and irrecoverable.
>
> * * *
>
> As stated, we do not believe you meet the policy requirement concerning loss of vision or loss of hearing based on the medical findings. In addition we have no evidence indicating any of the alleged conditions were the result of an accident. Thus, we were unable to consider any benefit payments at this time.
>
> * * *

(CUNA 118-20).

On July 15, 2009, plaintiff provided notice of a claim for loss of sight in her right eye subsequent to a trip and fall accident on February 19, 2009. (CUNA 389-91). CMFG Life acknowledged receipt of Claim 090716055 on July 16, 2009 and requested information to be able to review the claim, including a completed

claim form, a copy of the policy, accident or incident report and a completed attending physician's statement.  (CUNA 388).  In August 2009, plaintiff provided a narrative statement in support of her claim, alleging that she hit her head on an overhead bin on February 19, 2009 while on a Northwest Airline/Mesaba Airlines flight from Memphis, Tennessee to Greenville, Mississippi.  (CUNA 386, 64-66). Plaintiff presented to Delta Regional Medical Center on February 22, 2009 and had a normal CT scan.  (CUNA 44-45).  The flight attendant's incident report made no mention of plaintiff blacking out as she had reported or complaining of any problem with her vision following the incident (CUNA 259, 65); *see also* Dkt. 29, Ex. 3, ¶¶ 14, 15.  Plaintiff did not seek or request medical care at the time of the accident or alert anyone to any problems. (CUNA 259, 65).

When contacted by telephone regarding his opinions pertaining to plaintiff's vision loss and its cause, Dr. Lin advised that plaintiff's visual acuity of 20/400 and 20/150 was not justified by the scans and that he was unable to verify that any of her visual issues were a direct result of an accident.  (CUNA 256, 24-25).  He further stated that he believed that she could see more than she reported.  *Id*. In February 2010, plaintiff submitted a report from an ophthalmologic examination performed on December 2, 2009 relative to an application for social security disability made by plaintiff.  (CUNA 357).  Dr. Daniel S. Zuckerbrod

concluded that plaintiff had a healthy right eye contrary to her history of optic neuritis on the right side but found optic neuropathy on her left side. *Id.* His examination did not support her measured visual acuity and visual fields. *Id.* While he found that she would function as a monocular individual, with her right eye, he further stated that she probably has better vision than she measured during the examination. *Id.* His prognosis was indeed good for the right eye, yet uncertain for plaintiff's left eye. *Id.*

Subsequent to the receipt of Dr. Zuckerbrod's report, CMFG Life forwarded questions for Dr. Zuckerbrod to answer (CUNA 354), who provided verbal answers on February 4, 2010, indicating that he felt that "she could do better on her eye inconsistent with" what she indicated to him during the examination. (CUNA 256, 26). He pointed out that his assessment was supported by the fact that if she were as blind as she said she would not be able to drive; yet, she was still driving and felt that she was a safe driver. *Id.* When asked whether the loss of vision was due to an accidental injury, he said "not likely," as there would be other indicators if her loss of vision was due to nerve damage such as an optical fraction somewhere or MRI findings regarding an injury. *Id.*

At the end of April 2010, plaintiff reported to CMFG Life that she had had a slip and fall accident in August 2009 at Great Expressions Dental Centers, which allegedly further worsened her visual acuity. (CUNA 347). She further forwarded

an office visit note by Dr. Robert W. Shick, Jr, O.D. relative to an examination on February 6, 2010, where she presented with corrected vision of 20/400 in the right eye and 20/70 in the left eye. (CUNA 338). Dr. Shick instructed her that based on her measured visual acuity she was not legal to drive, even with glasses. *Id*. Answering subsequent questions forwarded by CMFG Life, Dr. Shick indicated that he could not determine whether plaintiff's vision loss was due to an accidental injury. (CUNA 336). He explained that if plaintiff's loss was due to a medical condition, it would be due to optic neuropathy based on optic nerve pallor. *Id*.

On June 3, 2010, CMFG Life further forwarded questions to Dr. Lin to follow up on his latest examinations of plaintiff. (CUNA 331-32). On August 11, 2010, Dr. Lin returned his answers, noting that it was unknown whether plaintiff's loss of vision was due to an accidental injury or a medical condition. (CUNA 321) Dr. Lin's medical records which CMFG Life received shortly thereafter in November 2010 echo same. (CUNA 305 "unexplained vision loss"; CUNA 303 "visual loss OD>OS ? unknown etiology"). Dr. Lin's medical records further demonstrate fluctuating uncorrected vision from 20/200 in the right and 20/150 in the left on January 22, 2008 to 20/100 in the right and 20/60 in the left on February 18, 2008. (CUNA 306, 310). On March 17, 2008, plaintiff's uncorrected visual acuity was 20/400 in the right and 20/100 in the left eye, yet could be corrected to better than 20/150 on the right and better than 20/80 on

the left.  (CUNA 305).  On June 9, 2008, plaintiff's uncorrected vision was 20/100 in the right and 20/70-2 in the left eye.  (CUNA 303).  Two months later, on August 25, 2008, plaintiff's corrected vision was down to 20/400 and 20/200 (CUNA 301) and on November 24, 2008 up at 20/200 and 20/100.  (CUNA 298). In June 2009, her corrected vision was measured at 20/100 in both eyes (CUNA 296) and in July 2009 it was down to counting fingers.  (CUNA 294).  On November 11, 2009, plaintiff's uncorrected vision was still at counting fingers in the right eye and 20/150 in the left eye, which could further be corrected to 20/100.  (CUNA 292).  On February 3, 2010, plaintiff was measured at 20/200 in both eyes (CUNA 290).

On November 19, 2010, CMFG Life denied plaintiff's claim given that not one of plaintiff's treating physicians had opined that plaintiff suffered irrecoverable loss of sight due to an accident.  (CUNA 259).  Given the IME results as documented by Dr. Trobe, CMFG Life further explained that plaintiff did not meet the policy requirements concerning loss of vision.  (CUNA 261)

In recent correspondence dated January 28, 2011, Dr. Lin indicated that plaintiff's vision had stabilized to 20/100 bilaterally.  (Ex. B (Dr. Lin's deposition) at Ex. 2 p. 22).  He confirmed the same during his deposition testimony, where he further explained that plaintiff's diagnosis of multiple sclerosis, which she concedes to having had since 2003, very plausibly caused her vision problems.

(Ex. B at p. 35, 22).

## III.   ANALYSIS AND CONCLUSIONS

### A.   <u>Standard of Review</u>

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Kocak v. Community Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to

particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admissions, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact. Fed.R.Civ.P. 56(c)(1).[2]

B.   Choice of Law

Plaintiff seems to suggest that she is entitled to summary judgment under Mississippi insurance law, as opposed to the summary judgment standards set forth in the Federal Rules of Civil Procedure.  (Dkt. 39, Pg ID 1018).  She also cites to a Mississippi case for the proposition that her accidents "further aggravated, rendered active, or set in motion multiple sclerosis, the latent or

---

[2]  Formerly, "Rule 56(e) require[d] that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit ... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Johnson v. Memphis City Schools*, 2010 WL 1957267, *2 (W.D. Tenn. 2010), quoting, 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988). According to the Advisory Comments to the recent amendments, this specific requirement was omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.  Comments, 2010 Amendments to Fed.R.Civ.P. 56, subdivision (c). Notably, the language changes have not changed the standard itself.  *Id*. ("The standard for granting summary judgment remains unchanged.").

dormant preexisting disease, which in turn contributed to this disability for which recovery is ought and where accidental injury is the proximate cause of the resulting loss." *Bankers Life and Cas. Co. v. Crenshaw*, 482 So.2d 254 (Miss. 1985). Plaintiff does not offer any specific choice of law analysis, other than her claim that because the policy was purchased in Mississippi, the law of that state controls, not Michigan.[3]

"A federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." *International Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996). Generally, in the absence of a choice of law provision in an insurance policy, the Michigan courts follow the Restatement, which includes an analysis of a variety of factors, including the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Moon v. North American Ins. Co.*, 2007 WL

---

[3] Notably, as discussed *infra*, plaintiff has not offered any evidence that her vision loss was, in fact, caused by an accident, in whole or in part. *See e.g., Turnipseed v. Unum Life Ins. Co. of America*, 230 F.Supp.2d 727 (S.D. Miss. 2002) (The *Crenshaw* court held that the "consistent holdings" of the Mississippi Supreme Court did not prevent recovery if the insured could show that the original trauma had played any part in the eventual loss of limb.). And, she has not offered any evidence to support her theory that her purported "latent" multiple sclerosis was triggered by any of the accidents. Thus, even if the Court were to apply Mississippi law as posited by plaintiff, the result would likely be no different.

1599743, *3 (E.D. Mich. 2007), citing Restatement Second of Conflicts, § 188.  In

addition, in cases involving insurance contracts, the law of the state where the

insured is domiciled is presumed to apply.  *Moon*, at *3, citing Restatement

Second of Conflicts, § 192.  Plaintiff admits in her complaint that, while she has

two homes (one in Michigan and one in Mississippi), she resides in Detroit,

Michigan.  (Dkt. 1, Pg ID 1).  She has offered no basis for the Court to depart from

the general rule that the law of the domicile of the insured applies.  Thus, it is

appropriate to apply Michigan law to the present controversy.

     B.    <u>Accidental Dismemberment</u>

     While much of plaintiff's motion for summary judgment is difficult to

follow and makes a variety of claims based on the United States Constitution,[4] she

appears to take the position that she satisfies the certificate's definition of

irrevocable and total loss of vision in one eye because of the fluctuation in her

visual acuity, as set forth in Dr. Lin's records.  Plaintiff asserts that because the

certificate of insurance "does not state that when a policyholders have [sic] vision

disturbances with vision loss it [sic] not considered total and irrevocable loss of

vision at no give [sic] period of time and how long does this have to occur to be

considered to be total and irrevocable loss of vision even when the total loss of

_____

    [4]  Such claims are not viable because defendant is not a state actor.

vision has most prevalence as future diagnosis." (Dkt. 39, Pg ID 1019). Plaintiff

appears to be arguing that because nothing in the policy specifically excludes

fluctuating vision loss, it must be included.

The undersigned agrees, however, with defendant that plaintiff's own

medical records as well as the testimony of her own treating physician Dr. Lin

clearly demonstrate that plaintiff does not suffer from total and irrecoverable loss

of vision in her right eye as required by the Certificate. Specifically, after

plaintiff's 2007 accidents, her vision was initially 20/100 and 20/60. (CUNA 127)

In 2008, plaintiff's vision improved to corrected 20/100 and 20/60 in February

2008 (CUNA 158, 306, 310) and uncorrected 20/100 and 20/70-2 in June 2008.

(CUNA 303). Subsequent to the February 2009 incident in the airplane, she

presented with corrected vision at 20/100 in both eyes in June 2009 and an IME

resulted in a normal ophthalmological exam with assumed visual acuity

of 20/20. (CUNA 296, 127-28). Since the filing of her lawsuit, plaintiff's vision

appears to have stabilized at 20/100 in both eyes as she conceded during her

deposition. (Dkt. 33, Ex. B at Ex. 2, p. 22; Ex. C, p. 82, l. 5-10). Plaintiff also

concedes in her own motion that her vision in her right eye with corrective lenses

is 20/70.[5] (Dkt. 29, p. 14). There is no question that plaintiff's medical records do

---

[5] While plaintiff does not claim that her uncorrected vision should be used
to determine whether she has total and irrevocable loss of vision under the

not support a dismemberment.  Thus, the undersigned agrees that defendant is

entitled to summary judgment as a matter of law on this basis. For this same

reason, plaintiff's motion for summary judgment should be denied.

C.     Causation

Plaintiff claims that her total and irrevocable vision loss resulted from the

numerous accidents that occurred in 2007-2009, which set into motion the latent

or dormant onset of multiple sclerosis.  (Dkt. 39, Pg ID 1012).  In support of her

claim, plaintiff points to Dr. Lin's statement that it was possible that her vision

loss was due to an accident and to the accident reports regarding her various

accidents.  Even if plaintiff indeed suffered from a dismemberment as defined in

the Certificate, the undersigned agrees with defendant that she can demonstrate

neither that it was due to an injury as required to entitle plaintiff to benefits nor

that it did not result from any other causes, specifically, disease, sickness or

illness.  (CUNA 8-9).  As noted by defendant, the record is devoid of evidence

from plaintiff's treating physicians that her vision loss was the result of an

accident.  Rather, in June 2008, Dr. Lin explained that he was unable to pinpoint

---

Certificate, such a position is not, in any event, supported by case law.  *See e.g.*,
*Fairley v. Prudential Ins. Co.*, 40 F.3d 385 (5th Cir. 1994) (Loss of sight is not
irrevocable if it can be regained by reasonable medical steps such as corrective
appliances or surgery); *see also*, *Scallion v. Hartford Life and Accident Ins. Co.*,
2009 WL 3055342 (W.D. La. 2009) (same).

Report and Recommendation
Cross Motions for Summary Judgment
*Sexton-Walker v. CUNA*; Case No. 10-15146

what caused plaintiff's condition, (CUNA 163-64) an opinion he has repeated. (CUNA 20, 321, 305, 303, Ex. B at pp. 20, 21). Similarly, Dr. Trobe opined that plaintiff's loss of sight was not due to an injury. (CUNA 127-28). Dr. Zuckerbrod found it unlikely given a lack of other indicators for vision loss due to accidental injury, such as an optical fraction or MRI findings regarding an injury. (CUNA 256, 26). And, Dr. Shick likewise could not determine whether plaintiff's vision loss was due to an accidental injury. (CUNA 336). Instead, all physicians agreed that plaintiff's diagnoses of optical nerve pallor, ocular surface disease and optic neuropathy caused some vision loss. (CUNA 127, 338, Ex. B, p. 20).

Specifically, Dr. Lin noted during his deposition:

> She did have a mild degree of pallor and, you know, that can be responsible for some, you know, mild visual loss. And the erosions on the corneal surface can definitely cause some visual loss, usually a few lines of vision, probably about three or four lines at the most. So I could explain with the findings her vision going to about 20/40, 20/50, but it couldn't -- I wouldn't be able to explain why it would go to 20/400.

*Id*. Additionally, Dr. Lin found multiple sclerosis, which plaintiff has been diagnosed with since 2003, to very plausibly be a cause of her loss in visual acuity. (Ex. B at p. 22, 35). Contrary to her statements throughout this litigation that she did not have any vision problems prior to 2008, plaintiff attached correspondence dated March 10, 2003 to her motion for summary judgment,

identifying blurred vision as a result of multiple sclerosis.  (Dkt. 29, Ex. 1, p. 1).

Neither party was able to locate a case applying Michigan law to the interpretation of a similar insurance policy provision, and the undersigned was unable to locate any either.  However, there are many federal cases involving similar policies governed by ERISA in which the courts have interpreted the policy in the manner suggested by defendant.  For example, courts have concluded that policy language requiring that an accident is the sole and independent cause of the death or dismemberment has the effect of requiring the insurance company to disqualify an insured from receiving accidental dismemberment or death benefits where interdependent accident and non-accidental causes of death are present.  *Sangster v. Metropolitan Life Ins. Co.*, 54 F.Supp.2d 708, 712 (E.D. Mich. 1999); *Criss v. Hartford Accident and Indemnity Co.*, 1991 WL 640066 (E.D. Mich. 1991) (insured is required to demonstrate that the accident is the sole and independent cause of the death/dismemberment); *Biondo v. Life Ins. Co. of North Amer.*, 116 F.Supp.2d 872, 884-5 (E.D. Mich. 2000) (the insured cannot demonstrate that the dismemberment occurred as the result of the accident and no other cause and that the loss did not in any way result from disease or bodily infirmity).  The undersigned finds the analysis in these cases persuasive and concludes that if the Michigan Supreme Court were to examine this particular

issue, it would adopt the same well-reasoned analysis.[6]  In this case, plaintiff

simply does not point to any evidence supporting her claim that her vision loss

occurred as the sole and independent cause of an accident and that the loss did not

in any way result from optical disease.  Thus, the undersigned agrees that

defendant is entitled to summary judgment as a matter of law on this basis as well.

For this same reason, plaintiff's motion for summary judgment should be denied.

## IV.   RECOMMENDATION

For the reasons set forth below, the undersigned **RECOMMENDS** that

defendant's motion for summary judgment be **GRANTED** and that plaintiff's

motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

---

[6]  "In the absence of controlling authority by the controlling state's highest court on a particular issue, this Court must determine what that court would decide if faced with the issue." *MoneyForLawsuits V LP v. Rowe*, 2012 WL 1068171 (E.D. Mich. 2012).  As explained in *Rowe*, in making this determination, the Court may look to a variety of sources, including "the considered dicta" of the highest state court, *see Nolan v. Transocean Air Lines*, 365 U.S. 293, 293-96 (1961); decisions of that court in analogous cases, *see Monette v. AM7-7 Baking Co.*, 929 F.2d 276, 280–83 (6th Cir. 1991); decisions of the state's intermediate appellate courts, *see West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940); the majority view of other jurisdictions and scholarly treatises, law review articles, and Restatements of the law, *see Cox v. Nasche*, 70 F.3d 1030, 1031-32 (9th Cir. 1995).

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 20, 2012                        s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on <u>July 20, 2012</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Edna S. Bailey and William S. Cook,</u> and I certify that I have mailed by United States Postal Service the foregoing pleading to the following non-ECF participant(s), at the following address(es): <u>Verlena Sexton-Walker, 6354 Majestic, Detroit, MI 48210</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
